```
                    United States District Court
                      District of Massachusetts
_____
                              )
SHAUN JENKINS,                )
                              )
        Petitioner,           )
                              )
        v.                    )     Civil Action No.
                              )     12-10793-NMG
KAREN BERGERON,               )
                              )
        Respondent.           )
_____)
```

## MEMORANDUM AND ORDER

**GORTON, J.**

This habeas petition arises out of the conviction of petitioner Shaun Jenkins ("Jenkins" or "petitioner") in 2005 for first-degree murder in Massachusetts Superior Court.

## I. Background

### A. State court proceedings

In April, 2003, Jenkins was indicted for the murder of his cousin, Stephen Jenkins ("Stephen"). He was tried and convicted of first-degree murder in April, 2005 and sentenced to life in state prison. The Superior Court denied his motion for a new trial. The Supreme Judicial Court of Massachusetts ("SJC") affirmed the conviction and the order denying the motion for a new trial in February, 2011 upon finding, inter alia, that the claims asserted in the instant petition lacked merit. Commonwealth v. Jenkins, 458 Mass. 791 (2011).

**B. Federal court proceedings**

In September, 2012, Jenkins filed the instant petition for habeas corpus pursuant to 28 U.S.C. § 2254. He challenges his state court conviction on the grounds that 1) he did not waive his Sixth Amendment right to testify, 2) his trial counsel was ineffective and 3) the Commonwealth failed to disclose exculpatory evidence in violation of due process.

For the following reasons, the petition for habeas corpus will be denied.

## II. Legal Analysis

**A. Habeas standard**

A federal court sitting in habeas corpus is not obliged to re-examine state-court determinations of state-law issues but rather "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Factual findings made by state courts on direct review are therefore entitled to a presumption of correctness and interpretations of state law are binding. 28 U.S.C. § 2254(e)(1); Bradshaw v. Richey, 546 U.S. 74, 76 (2005).

When the basis for a petitioner's application for a writ of habeas corpus was adjudicated on the merits in state court, the petition will be granted only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established Supreme Court precedent if "the state court applies a rule that contradicts the governing law set forth" in Supreme Court cases or if the facts before the state court are

> materially indistinguishable [from a Supreme Court decision but the state court] nevertheless arrives at a [different] result.

Williams v. Taylor, 529 U.S. 362, 405-06 (2000). A decision represents an "unreasonable application" of Supreme Court precedent if the state court "identifies the correct governing legal rule ... but unreasonably applies it to the facts" of the particular case. Id. at 407-08. In both instances, the applicable legal principle must be clearly established in a holding by the Supreme Court and cannot appear in dicta or be based upon the holdings of lower federal courts. Id. at 412.

When the basis for a petitioner's application for a writ of habeas corpus was not adjudicated on the merits in state court, however, the petitioner's claim will be reviewed de novo. Norton v. Spencer, 351 F.3d 1, 5 (1st Cir. 2003).

-3-

### B. Waiver of petitioner's right to testify

A criminal defendant's right to testify is "a fundamental constitutional right." Rock v. Arkansas, 483 U.S. 44, 53 n. 10. Such a right can only be waived intelligently, voluntarily and knowingly. Jenkins, 458 Mass. at 803; see also Johnson v. Zerbst, 304 U.S. 458, 464 (1938). It is the defendant's burden to prove that he did not waive his right knowingly and intelligently. Johnson, 304 U.S. at 468.

Jenkins contends that he never waived his fundamental right to testify because his trial counsel made a unilateral decision on his behalf. He asserts that the SJC addressed only whether he was informed of his right to testify but not whether he waived that right and therefore this Court should review his claim de novo. Jenkins emphasizes that knowledge of his right to testify is inconsequent if his counsel refused to allow him to testify.

The Commonwealth responds that the SJC already adjudicated the claim of whether trial counsel made a unilateral decision not to allow the petitioner to testify because Jenkins presented that argument in his briefing before the SJC. It contends that the Court should therefore apply deferential review under Section 2254(d) and cites in support Harrington v. Richter, which held:

> There is no merit to the assertion that compliance with § 2254(d) should be excused when state courts issue summary rulings....When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.

131 S. Ct. 770, 784-85 (2011).

Contrary to petitioner's contention, in addition to determining that the petitioner was aware of his right to testify, the SJC held that the trial judge

> did not abuse his discretion in concluding that the defendant's waiver was the product of a purposeful and informed judgment on his part.

Jenkins, 458 Mass. 791 at 803. In light of the SJC's determination regarding petitioner's waiver of his right to testify, the Court declines to review petitioner's waiver argument de novo.

Acknowledging the deference afforded under 2254(d) review, the Court concludes that the SJC's decision was not an unreasonable application of clearly established federal law. There is no standard clearly established by the United States Supreme Court addressing the circumstances under which a criminal defendant waives the right to testify in his own behalf. Thompson v. Battaglia, 458 F.3d 614, 619 (7th Cir. 2006) (noting the "variety in practice among the state courts and the

various federal courts" regarding the issue of waiver of the right to testify).

Moreover, the First Circuit Court of Appeals has held that "a criminal defendant must claim his privilege or right to testify by attempting to take the stand or it is waived." Siciliano v. Vose, 834 F.2d 29, 30 (1st Cir. 1987); see also U.S. v. Webber, 208 F.3d 545, 551 (6th Cir. 2000) (holding that "[w]aiver is presumed from the defendant's failure to testify or notify the trial court of the desire to do so").

Here, the record does not suggest that petitioner's counsel prevented him from testifying in violation of his Sixth Amendment right or that petitioner attempted to take the stand. As summarized by the SJC, the factual record indicates that 1) the petitioner admitted that he discussed the decision to testify with his attorney, 2) the trial judge conducted a colloquy with the petitioner during trial, at which point the judge informed Jenkins that he had every right to testify and every right not to testify, 3) the petitioner acknowledged that he understood each of the points that the judge had discussed with him during the colloquy, 4) the petitioner responded that he had no questions regarding his right to testify and 5) "there was no indication of any dispute or disagreement between the defendant and his counsel as to trial tactics or of any kind." Jenkins, 458 Mass. 791 at 803-04 & n. 10.

Accordingly, the Court concludes that the determination by the SJC regarding petitioner's waiver to testify is not contrary to federal law.

**C.   Ineffective assistance of counsel**

Jenkins claims that he received ineffective assistance of counsel due to 1) his counsel's advice regarding whether to testify at trial and 2) his counsel's failure to impeach adequately the Commonwealth's key witness, petitioner's cousin Craig Jenkins ("Craig").

In Strickland v. Washington, the United States Supreme Court articulated a two-pronged test for whether the Sixth Amendment right to effective assistance of counsel has been violated. 466 U.S. 668, 686–687 (1984).  To prevail on a claim of ineffective assistance of counsel, the petitioner must show that his counsel's representation 1) "fell below an objective standard of reasonableness" and 2) that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 687-88, 694 (1984).

This is a difficult test to satisfy.

> [J]udicial scrutiny of counsel's performance must be highly deferential [and] counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

Id. at 689-90; see also Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006) (noting that petitioner must show, "given the facts

known at the time, counsel's choice was so patently unreasonable that no competent attorney would have made it") (internal citation omitted).

To prevail on a habeas petition pursuant to 28 U.S.C. § 2254, the petitioner must show not only that his representation failed the Strickland test, but also that the state court's evaluation of his ineffective assistance claim was "contrary to" clearly established Supreme Court precedent or constituted an "unreasonable application" of federal law. 28 U.S.C. § 2254(d); Mello v. DiPaulo, 295 F.3d 137, 142 (1st Cir. 2002). In essence, the question before the reviewing court is

> whether the state court's application of the Strickland standard was unreasonable, [or] whether fairminded jurists would all agree that the decision was unreasonable.

Jewett v. Brady, 634 F.3d 67, 75 (1st Cir. 2011) (internal alterations omitted) (citing Harrington v. Richter, 131 S. Ct. 770, 785 (2011)). The reviewing court therefore must be doubly deferential, taking into account Strickland's strong presumption of attorney competence and the high level of deference that Section 2254 affords.

### 1. Defense counsel's advice not to testify

Jenkins argues that the reasons proffered by his defense counsel not to testify were unreasonable and that the SJC failed to consider the intangible benefits available to him had he

testified.  He speculates, for example, that his willingness to testify would likely have "resonate[d] with the jury" and the fact that he did not testify prejudiced him.

Such arguments do not carry Jenkins's burden to show that his representation at trial failed the Strickland test or that the SJC's evaluation of his ineffective representation claim is inconsistent with Supreme Court precedent.  Jenkins has not shown that his attorney's advice was objectively unreasonable and his speculation that his willingness to testify could have influenced the jury's decision does not overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

Nor has Jenkins provided sufficient evidence to show that SJC's evaluation of his claims was inconsistent with Supreme Court precedent.  In fact, the standard the SJC applied was more deferential to Jenkins than the Strickland standard.  Rather than assessing whether defense counsel's alleged ineffectiveness was "objectively unreasonable," the SJC instead considered whether it resulted in a "substantial likelihood of a miscarriage of justice." Jenkins, 458 Mass. at 804.

Massachusetts statutory law requires courts reviewing first-degree murder convictions to apply that standard rather than the Strickland standard or its state law equivalent because

-9-

it is more favorable to the defendant. M.G.L. c. 278, § 33E.
When a court determines that the "miscarriage of justice"
standard is satisfied, however, the Strickland standard is
satisfied as well. See Mello, 295 F.3d at 145 (concluding that
the "miscarriage of justice" standard is "at least as favorable"
to the petitioner as the federal standard).

The SJC reasonably determined that no miscarriage of
justice resulted from Jenkins's representation at trial and that
even if counsel's performance was deficient, the petitioner
suffered no prejudice. It concluded that defense counsel had
"good and sufficient reasons" for advising Jenkins not to
testify and that even if defense counsel's advice was
substandard, Jenkins's testimony was unlikely to have affected
the outcome of the trial because

> [f]or the defendant to prevail, the jury would have had to disbelieve the testimony of virtually every other witness.

Jenkins, 458 Mass. at 809. The SJC's determination that no
miscarriage of justice occurred as a result of Jenkins's
representation at trial was not "contrary to" clearly
established federal law. Williams, 529 U.S. at 405-06. Jenkins
has not shown that he is entitled to relief.

### 2. Defense counsel's failure to impeach adequately the Commonwealth's key witness

Jenkins contends that his attorney's failure to impeach adequately the Commonwealth's key witness, Craig Jenkins, was unreasonable and constituted ineffective assistance. Specifically, he asserts that his counsel should have impeached Craig with Craig's prior grand jury testimony, criminal record and some allegedly inconsistent statements. Jenkins also argues that the SJC failed to consider the fact that his attorney's failure to impeach the witness could have had a "cumulative effect" that would have proven the witness was not credible. The Court rejects petitioner's arguments.

The SJC noted at the outset of its analysis of the ineffective assistance of counsel claim that the "[f]ailure to impeach a witness does not, standing alone, amount to ineffective assistance." Jenkins, 458 Mass. at 805. It then analyzed each of petitioner's contentions and concluded that the various instances where counsel failed to impeach Craig did not amount to ineffective assistance. Id. at 805-08. The SJC observed, for example, that the grand jury testimony Jenkins contends his counsel should have used to impeach Craig's credibility contained additional statements that cast Jenkins in a negative light and would have "undercut" any benefit impeaching the witness might have produced. Id. at 805. The SJC

made the determination that the attorney's decision not to impeach the witness with the grand jury testimony was reasonable even after considering the affidavit in which defense counsel admitted he had "no strategic reason" for not impeaching him. Id. at 806.

With respect to the argument that counsel was at fault for impeaching Craig with only one of his four prior convictions, the SJC agreed with the trial court that the cross-examination using the single conviction adequately impeached the witness and that anything more "would have been mere surplusage." Id. at 808.

Finally, the SJC recognized repeatedly that the cumulative evidence against the petitioner was "strong" and that counsel's alleged failures to impeach was "not likely to have influenced the outcome." Id.  Jenkins therefore has not carried his burden to show that the SJC's evaluation of his "failure to impeach" argument was contrary to Supreme Court precedent or that fair-minded jurists would all find the SJC's determination unreasonable. See Jewett, 634 F.3d at 75.  This Court declines to second-guess the SJC's rejection of petitioner's claim of ineffective assistance of counsel.

### D. **Failure to disclose exculpatory evidence**

Jenkins contends that he was deprived of his due process rights to exculpatory evidence when the prosecution failed to

advise defense counsel of the change in Craig's grand jury testimony regarding their telephone conversation after Stephen's death.  As referenced supra, Craig recounted to the grand jury that he told Jenkins "...I ain't Stephen man. I said, you ain't gonna do to me what you did to him..." whereas at trial, Craig testified that the petitioner warned him that "you don't want the same f[...] thing to happen to you."

The SJC rejected petitioner's argument that his unawareness in advance of the changed testimony resulted in a violation of due process after concluding that "there is no indication the prosecutor was aware that Craig would change his testimony." Jenkins, 458 Mass. at 806, n. 12.  Petitioner insists, however, that the SJC's decision was an unreasonable application of clearly established federal law under Brady v. Maryland, 371 U.S. 812 (1962).  A Brady violation occurs when 1) previously undisclosed evidence reveals that the prosecution introduced trial testimony that it knew or should have known was perjured or 2) the prosecution fails to volunteer material, exculpatory evidence. See Kyles v. Whitley, 514 U.S., 419, 433-34 (1995).

With respect to the first kind of violation, there is no evidence in the record that the prosecution used testimony that it knew or should have known to be false.  Although Craig's grand jury and trial testimony differed, the Court cannot conclude that the prosecutor should have known that Craig's

trial testimony was false because inconsistencies in successive testimony are not, without more, a basis to conclude that the prosecution knowingly introduced perjured testimony. See, e.g., U.S. v. Holladay, 566 F.2d 1018, 1019 (noting that the "[p]resentation of a witness who recants or contradicts his prior testimony is not to be confused with eliciting perjury" and holding that there was "no evidence that the prosecution knew or believed the trial testimony to be untrue; hence, the conviction was not obtained by the presentation of testimony known to be false.").

As to the second kind of Brady violation, the SJC reasonably concluded that there was no indication that the prosecutor was aware Craig would change his testimony or that any evidence was being suppressed by the Commonwealth. Moreover, without knowledge that the statement was false, the prosecution had no obligation to bring the discrepancy to the attention of the petitioner's attorney during the trial.

Accordingly, this Court concludes that the determination by the SJC regarding the Commonwealth's alleged failure to disclose exculpatory evidence was not contrary to Supreme Court precedent.

## ORDER

For the foregoing reasons, the petition of Shaun Jenkins for a writ of habeas corpus (Docket No. 2) is **DENIED** and the action is **DISMISSED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated December 19, 2014